FILED

2015 Jul-17  PM 03:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

REGINALD BERNARD SCOTT,　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff　　　　)
　　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　　　)　　　　Case No. 7:14-cv-01347-CLS-HGD
　　　　　　　　　　　　　　　　)
CAPTAIN JOHN HUTTON, et al.,　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants　　　)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Reginald Bernard Scott, hereinafter referred to as the plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at Bibb County Correctional Facility (BCCF) in Brent, Alabama.　The plaintiff names Captain John Hutton and unidentified Alabama Department of Corrections' (ADOC) CERT Team members as defendants. The plaintiff seeks a jury trial, declaratory judgment and monetary damages.　In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.　*See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I.  Standard of Review

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, 28 U.S.C. § 1915A, requires the court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint it determines is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  Where practicable, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  *See* 28 U.S.C. § 1915A(a).

A dismissal pursuant to § 1915A (b)(1) for failure to state a claim is governed by the same standards as dismissals for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).   To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Because "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys[,]" they are liberally construed.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## II.  Procedural History

The plaintiff filed his complaint on July 14, 2014.  (Doc. 1).  On September 22, 2014, the plaintiff was notified that his complaint was deficient, and was directed to amend the complaint within twenty (20) days of the entry date of the order in the following manner:

> The plaintiff failed to provide the <u>COMPLETE</u> names and/or addresses of all defendants.  The plaintiff must provide the complete names of all defendants or as much of the names as known, and any identifying information (such as gender, race, approximate age, job title or position), and a complete address for each defendant.  Label your response "Amended Complaint," and write "7:14-cv-1347-CLS-HGD" at the top of each page.

> The plaintiff also has failed to set forth his claims adequately.  In the amended complaint, the plaintiff should name as defendants only those persons who violated his constitutional rights and committed medical malpractice.  The plaintiff must identify those persons as defendants both in the heading and in Part III of the complaint.  The plaintiff should also state clearly how <u>each</u> named defendant violated his constitutional rights and committed medical malpractice, the date(s) on which the incident(s) occurred, and where the incident(s) occurred.   THE PLAINTIFF  MUST  CLEARLY  SET  FORTH  THE  **FACTS** CONCERNING ANY INCIDENT ABOUT WHICH HE COMPLAINS. The plaintiff is ADVISED that conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted.  *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  The amended complaint must include all of the plaintiff's claims in this action; IT SHOULD NOT REFER BACK TO THE ORIGINAL COMPLAINT.  The plaintiff is ADVISED that the Court will consider **<u>only</u>** the claims set forth in the amended complaint.  After completing the new complaint form, the plaintiff should mail it to the Clerk of the Court.

(Doc. 8 at 1-2).  The plaintiff was further notified that failure to amend his complaint as directed could result in the dismissal of his case.  (*Id.* at 2).  The plaintiff did not file an amended complaint.

### III.  Factual Allegations

On June 19, 2014, "the Cert team came to [BCCF]."  (Doc. 1 at 3).  The team, along with Captain Hutton, conducted a shakedown in D-Dorm in search of prison contraband.  (*Id.*).  When Hutton and the team approached the plaintiff's cell, Hutton ordered the plaintiff off of his bed and to "get naked."  (*Id.*).  The plaintiff did so, and no contraband was discovered.  (*Id.*).  The plaintiff was then told "to go to the front where all the people they" were shaking down were located.  (*Id.*).

"A few minutes later," the plaintiff was called back to his bed and accused of lying about not having contraband because a cell phone had been found in his bunk box.  (*Id.*).  The plaintiff asserts he left his bunk box open when he went to the front of his dorm as ordered.  (*Id.*).

At this juncture, Hutton and the CERT team escorted the plaintiff "to the back" so that the "camera can't see them punching and kick[ing] me."  (*Id.* at 4).  The CERT team Captain "had [to] stop John Hutton from punch[ing] and kick[ing]"the plaintiff because Hutton would "not stop."  (*Id.*).  Hutton also verbally abused the plaintiff, calling him a "whore" and a "boy."  (*Id.*).  Hutton further humiliated the plaintiff by

forcing him to bend over and "expose" himself.  (*Id.*).  In their affidavits, inmates Michael Rencher and Cheron Watson echo the plaintiff's version of events up to this point and also assert the "group of officers attacked" the plaintiff "for no reason." (*Id.* at 5-6).

The plaintiff claims "ALDOC and John Hudson and ALDOC CERT Team members unknown denied me medical health mal-pra[c]tice to cover the execessive (sic) force up[,]" but provides no further details.  (*Id.* at 2).  Elsewhere, he declares he "went to CO Simpson" for a body chart to be performed at the Health Care Unit, but was denied.  (*Id.*).  Inmates Rencher and Watson attest that "after the CERT team members exited Bay 3, Inmate Scott attempted to go get a body chart . . . and receive medical attention[,]" but he was refused both.  (*Id.* at 5-6).

Finally, the plaintiff complains "[t]hey . . . made [him] sleep on cold steel for 5 days."  (*Id.* at 4).  Inmates Rencher and Watson attest that "ADOC prison guards took his bunk's mat and forced him to sleep on cold steel."  (*Id.* at 5-6).

The plaintiff sues the defendants for "mal-practice medical claim of execessive (sic) force."  (*Id.* at 4).

# IV.  Analysis

## A.  Eleventh Amendment Immunity

A law "suit against the State [of Alabama] and its [agencies for monetary damages is] barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)).  No such consent can "be given under Art. I,  Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).  Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the state itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

Since the Alabama Department of Corrections is an agency of the State of Alabama, Eleventh Amendment immunity prohibits the plaintiff's suit for monetary damages against it.  Moreover, to the extent the plaintiff names Captain John Hutton and the unknown CERT Team members as defendants in their official capacities, they are immune from suit for monetary damages as well.  The remainder of this report and

recommendation presumes that Hutton and the CERT Team members are sued in their individual capacities.

## B. Excessive Force

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. 1, 6-7 (1992). In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7.

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

Hutton and the CERT Team purposefully escorted the plaintiff – compliant and completely nude – to an area unseen by a prison camera before initiating the attack. (Doc. 1 at 4). The plaintiff posed no threat toward the defendants, so there was no need for any application of force against him, much less the need to consider its temperance. (*Id.* at 5-6). The plaintiff does not describe the assault with any particularity other than to declare he was "punched" and "kicked," and that the CERT

Team members had to stop Hutton from continuing his assault, but the common understanding of those words indicates an amount of force stronger than a push or shove. (*Id.* at 4). He requested these defendants afford him medical attention, but this was denied. (*Id.* at 2). He also requested a body chart from Officer Simpson, who is not a named defendant, but this request also was denied. (*Id.*). The plaintiff does not reveal the nature or extent of any physical injury he suffered as a result of the assault, facts that would have assisted the court in determining the forcefulness of the blows.

The lack of information concerning the extent of his injuries, however, does not necessarily control because in an excessive force case,

> [t]he "core judicial inquiry," [is] not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." [*Hudson*,] 503 U.S. at 7; see also *Whitley v. Albers*, 475 U.S. 312, 319–321 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9; see also *id.*, at 13–14 (Blackmun, J., concurring in judgment) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' *e.g.*, injury that requires medical attention or leaves permanent marks").

*Wilkins v. Gaddy*   559 U.S. 34, 37 (2010) (second and third alterations supplied, parallel citations omitted).

Since "[i]njury and force . . . are . . . imperfectly correlated, and it is the latter that ultimately counts[,]" the facts alleged by the plaintiff are sufficient to direct defendants Hutton and the CERT team members to respond, even though the precise nature and extent of the plaintiff's injuries are unknown.  *Id.* at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

## C.  Cavity Search

The plaintiff acknowledges the defendants were present in his dorm on June 19, 2014, in order to conduct a contraband shakedown.  (Doc. 1 at 3). Moreover, he was told that contraband, *i.e.*, a cell phone, had been found in his bunk locker before defendant Hutton ordered him to comply with a visual cavity search. (*Id.*).   While it is clear that

> [p]risoners "do not forfeit all constitutional protections by reason of
> their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S.
> 520, 545 (1979), . . .  they do not enjoy the same Fourth Amendment
> rights as free persons, *see Harris v. Thigpen*, 941 F.2d 1495, 1513 (11th
> Cir.1991) (noting that a prisoner retains only those rights consistent
> "with his status as a prisoner or with the legitimate penological
> objectives of the corrective system" (citations omitted)).  Prisoners have
> no Fourth Amendment rights against searches of their prison cells, for
> example. *Hudson*, 468 U.S. at 526.  They must submit to visual

body-cavity searches executed without individualized suspicion.  *Bell*, 441 U.S. at 558.

*Padgett v. Donald*, 401 F.3d 1273, 1278 (11th Cir. 2005) (redaction supplied, parallel citations omitted).

The plaintiff is a convicted prisoner, and therefore the visual body cavity search conducted by defendant Hutton did not violate his Fourth Amendment constitutional rights.  Moreover, the search was not carried out in an "unreasonable" manner "under the circumstances" the plaintiff describes, even though he felt humiliated.  *Bell*, 441 U.S. at 558.  Accordingly, this claim is due to be dismissed for failure to state a claim upon which relief may be granted.

## D.  Derogatory name calling

Generally speaking, allegations of verbal abuse or harassment by prison officials against a prisoner do not state a constitutional violation sufficient to form the basis for a claim under § 1983.  *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993).  Under these principles, the profane and derogatory names defendant Hutton called the plaintiff in front of the CERT team members are insufficient to state a constitutional claim.

## E.  Denial of bunk mat

The plaintiff complains that his bunk mat was removed for five days after the June 19, 2014, incident.  In order to establish an Eighth Amendment violation, a

plaintiff must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. at 290.

Beginning with the first prong, prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). While it is the duty of prison officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349. Accordingly, extreme deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004). The

plaintiff must "at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Id*. at 1289.

When viewed in light of these parameters, it is clear that the plaintiff's loss of his bunk mat for five days does not adequately state an Eighth Amendment claim. Admittedly, being made to sleep on a cold, steel bunk for five days was uncomfortable or even harsh, but it was not an unquestioned and serious deprivation of the plaintiff's basic human needs.  The plaintiff has not alleged he was physically harmed by the lack of mattress or that he was faced with an unreasonable risk of serious damage to his future health or safety because he slept without one for this time period.  Since the plaintiff was not deprived of a basic need due to his temporary mattress loss, he cannot establish that prison officials were deliberately indifferent to a basic need, nor can he establish the requisite causation to support such this claim.

## F.  Deliberate Indifference to a Serious Medical Need

The courts have long recognized that the government has an obligation to provide medical care for those it has incarcerated and that inmates must necessarily rely on prison authorities to meet their medical needs as those needs arise. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Thus, a prison official's deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment.  *Id.* at 104. In that regard, it is clear that a guard's intentional denial or delay in providing

medical care to a prisoner or his interference with prescribed treatment can be evidence of deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990); *Washington v. Dugger*, 860 F.2d 1018 (11th Cir. 1988).

> Deliberate indifference to a detainee's [or prisoner's] serious medical needs requires 1) an objectively serious medical need and 2) a defendant who acted with deliberate indifference to that need. *See Burnette* [*v. Taylor*], 533 F.3d [1325,] at 1330 [(11th Cir. 2008)]. A "serious medical need" is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Id.* For liability, the defendant must 1) have subjective knowledge of a risk of serious harm, 2) disregard that risk, and 3) display conduct beyond gross negligence. *Id.*

> Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay: "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

*Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010).

The plaintiff alleges Hutton and the CERT team punched and kicked him, and then refused to grant him permission to go to the health care unit to cover up their use of excessive force. (Doc. 1 at 4). He also declares that he requested a body chart from Officer Simpson, who may or may not be a named defendant, but that request was denied. (*Id.* at 2). Still, the plaintiff describes no physical injury or harm to his person. A such, he has failed to plead sufficient facts establishing "an objectively 'serious medical need [ ],' . . . one that, if left unattended, 'pos[es] a substantial risk

of serious harm[.]'" *Taylor v. Adams*, 221 F.3d 1254, 1258 (11 th Cir. 2000) (quoting respectively, *Estelle v. Gamble*, 429 U.S. at 104, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (redaction supplied).   For this reason, the plaintiff cannot establish Hutton, members of the CERT team, or Officer Simpson acted with deliberate indifference when he was refused medical attention and a body chart.   This claim is due to be dismissed.

## G.  Medical Malpractice

The plaintiff alleges Captain Hutton and the CERT team members were responsible for medical malpractice because they refused to provide him medical care after the June 19, 2014, incident.   However, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994) (quoting *Estelle v. Gamble*, 429 U.S. at 106).   Instead, medical malpractice is "actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Further, the plaintiff does not contend that defendant Hutton or any of the CERT team members are health care providers.   Therefore, it does not appear that any of  them would be subject to Alabama's Medical Liability Act.   See ALA. CODE § 6-5-481 (attaching medical liability for purposes of the Act to medical and dental practitioners, medical institutions and professional corporations, physicians, dentists,

hospitals, and other health care providers employed by physicians, dentists or hospitals who are directly involved in the delivery of health care services).   Nor could he state a tort claim for simple negligence under Alabama state law, because that tort "is the inadvertent omission of duty" that "is usually characterized as an inattention, thoughtlessness or heedlessness[.]"   *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (additional internal citations omitted).

Since the plaintiff alleges Hutton and the CERT team members would not allow him to get medical care in order to cover up their use of force against him, the refusal was not the product of inadvertence, inattention, and the like.   The state law tort of wantonness also fails.   "Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. . . ."   *Id.* (internal citations omitted). Although the reason behind Hutton and the CERT team members' refusal is indicative of willful behavior, the plaintiff has failed to allege facts to establish that they knew the refusal would likely result in injury to the plaintiff, and that he was in fact injured.

## V.  Recommendation

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that all claim against all defendants be **DISMISSED** pursuant to

28 U.S.C. § 1915A(b)(1) and/or (2), with the exception of the excessive force claims against Hutton and the CERT team members. The magistrate judge further **RECOMMENDS** that the excessive force claims against Hutton and the CERT team members be **REFERRED** to the undersigned magistrate judge for further proceedings.

### VI.  Notice Of Right To Object

The plaintiff may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the clerk. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. An*, 474 U.S. 140, (1985); *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, the plaintiff must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.

Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.  Objections not meeting the specificity requirement set out above will not be considered by a district judge.  The filing of objections is not a proper vehicle to make new allegations or present additional evidence.  Furthermore, it is not necessary for the plaintiff to repeat legal arguments in objections.

The plaintiff may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DATED this 17th day of July, 2015.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE